Debt upon a bond given by one Fielding A. Belvin upon being appointed a constable for the county of Wake in February, 1841, in which the breaches assigned were for the failure of the officer to collect two executions which were placed in his hands for collection, and which, by the use of due diligence, he might have collected; for making a false return thereto, etc. The pleas were "Non est factum, conditions performed and not broken."
The relators, after proving, upon the trial, the execution of the bond by the defendants as sureties of Belvin, proved the receipt, of which a *Page 267 
copy marked (A) is sent as part of this case. They then introduced and proved the warrants, judgments, executions, and returns thereon, of which copies marked (B) and (C) are also sent as part of the case. The magistrate who gave the judgments and issued the (370) executions testified that the judgments were confessed before him by Hinton, and that in entering them he acted upon that confession; that the constable had before him also a note, upon which, after the judgments were given, he wrote the word "Judgment," a copy of which note, marked (D), is made part of this case. The magistrate testified further that he handed the executions to the officer at the time they were issued, and that at that time Hinton was living upon a tract of land which he had owned several years; and it was proved by other witnesses that he then had in his possession about forty barrels of corn, three head of horses, and a small stock of cattle and hogs. The relators showed further that the land upon which Hinton lived was levied upon under an execution issued on a judgment obtained in the county court of Wake at November term following, and the sum of $100 was raised by the sale of it.
The defendants then introduced and read in evidence the deed, a copy of which, marked (E), is made part of this case. They also proved that the officer Belvin made sale of Hinton's personal effects the latter part of April or the first of May, 1841, and that he had then in his hands other executions besides those in favor of the relators, but the executions were not produced on the trial and there was no evidence given to show when they were issued.
The relators, in reply, introduced testimony to show that Nancy Ferguson, the grantee in the deed, was insolvent at the time it was given, and that she had never had any other property than the tract of land mentioned therein; and also that Hinton, before and at the time of making the deed, was greatly indebted and embarrassed, and so continued up to the time of the relator's executions, and soon thereafter was sold out and proved utterly insolvent; and that he always possessed and used the land after, as he did before, the execution (371) of the deed.
The defendants insisted that the magistrate who gave the judgments in favor of the relators against Hinton had no jurisdiction of the cause; that, therefore, the judgments and the executions issued thereon were null and void, and, consequently, that the defendants were not responsible for any failure by the officer to collect the amount called for therein. But if this were not so, then they insisted that the officer was not bound, for want or deficiency of personal property, to levy upon the land without an indemnity being given or offered him.
The court held that the judgments were not void, and that the officer *Page 268 
was bound to use due diligence in the collection of the executions; that no indemnity was necessary to require him to levy on the lands, and that if there were a want of due diligence in making the amount of the executions out of the land and personal property proved to have been in Hinton's possession at the time when the executions were handed to him, the relators were entitled to recover the whole amount of the executions, or such part thereof as might have been made out of such property.
The relators had a verdict and judgment, and the defendants appealed.
(A)
Raleigh, 12 April, 1841. Received of Joseph and William Peace, a note on Joshua R. Hinton in their favor for $158.80, bearing date 20 February, 1841, with interest from November, 1840, for the purpose of collecting the same by dividing it into two judgments. All which I promise to do and make due return thereof to the said Joseph and William according to law. F. A. BELVIN, Const. $158.80.
(372) (B)
WARRANT.
STATE OF NORTH CAROLINA — WAKE COUNTY.
 To any lawful officer to execute and return within thirty days from the date hereof (Sundays excepted).
You are hereby commanded to take the body of Joshua R. Hinton and him safely keep so that you have him before me or some other justice of the peace for said county, to answer the complaint of Joseph and William Peace for the payment of the sum of $80 due by note, bearing interest.
 Herein fail not. Given under my hand 17 April, 1841. E. CHAPPELL, J. P.
Indorsed thereon judgment and execution as follows:
By confession of the defendant judgment is granted for $80. Given under my hand this 17 April, 1841, with interest from 20 February last. E. CHAPPELL, J. P.
NORTH CAROLINA — WAKE COUNTY.
To any lawful officer to execute and sell so much of the defendant's goods and chattels as will satisfy the above judgment and cost; for the want of goods and chattels, levy on lands and tenements. E. CHAPPELL, J. P.
Officer's return indorsed in these words:
No property found. H. A. BELVIN. *Page 269 
(C)
The warrant, judgment, execution, and return exactly like (B), except that the amount of note in the warrant and judgment was $78.80 instead of $80.
(D) (373)
$158.80, with interest from 1 November, 1840. I, Joshua R. Hinton, promise to pay to Joseph and William Peace or order the sum of $158.80 for value received. Witness my hand and seal 20 February, 1841. J. R. HINTON. [SEAL]
Across the face of which this entry appears:
Judgment granted 17 April, 1841.
E. CHAPPELL, J. P.
(E)
Deed of conveyance in the usual form in fee with covenant of general warranty from Joshua R. Hinton to Nancy Ferguson, stating the consideration to be $50 paid. Dated 18 April, 1840; proved 17 June, and registered 22 June, 1840.
We have examined this case, and we concur with his Honor, that the judgments rendered and the executions issued by the justice against Hinton were good in law. Each of the warrants on its face appears to be for a debt due by note, and each note within the jurisdiction of a justice. The defendant in these warrants, being summoned, appeared and confessed that he owed the debts in manner and form as was stated in each of the warrants. After this confession the justice had nothing further to do but to render judgment against Hinton, upon his confession, that he was indebted to the plaintiff in the manner and form as stated in each of the warrants. It being a rule of law that what is admitted need not be proved, the justice was bound to give judgment for the plaintiff without any other proof of the execution by Hinton of the two notes mentioned in the face of the two warrants. How can it then be said that the justice exceeded his (374) jurisdiction? It is said that the consent of Hinton could not give the justice jurisdiction of a matter which the law did not. This is admitted. As, if the justice had issued his warrant in favor of the plaintiff for $158.80, with interest, and Hinton had then come before him and confessed a judgment for that sum, it would have been void, because the law did not give the justice jurisdiction of such a sum; and the assent of Hinton could not in such a case have conferred *Page 270 
jurisdiction. But what did Hinton consent to? He confessed to the justice, on trial, that he had executed to the plaintiff two notes, one for the sum of $80 and the other for the sum of $78.80, and he confessed judgments on the same. Was that not within the jurisdiction of the justice? And could the justice have refused to give the plaintiff judgment upon these admissions? It seems to us that there was no other evidence necessary to substantiate the truth of the allegations made upon the face of each warrant, and that the justice had jurisdiction and was bound in law to render the judgments he did. Hinton was forever concluded by these judgments and executions; he never could have been heard to allege that in fact he did not execute the two small notes which he confessed to the justice he had executed. The constable ought to have used due diligence in collecting these executions. It appears, however, that he did not levy on the personal property of Hinton then in his possession — no other execution having a lien on it. It did not appear that there was a deficiency of personal property to satisfy the plaintiff's executions, so as to render it necessary for the constable to levy on the land; and it did not appear that the constable ever refused to levy on the land Hinton then lived on unless he was indemnified; therefore, that part of the charge of the judge which ruled that no indemnity was necessary to require the constable to levy on the land was not called for in the evidence of the cause. We, however, are not disposed (375) to say that it was erroneous. We think that this case is within the principle of Peace v. Stephens, 25 N.C. 92. There the small notes which had been given by the obligor for the large one were produced in evidence by the plaintiff; here they are confessed to be in in esse by Hinton, the alleged maker of them; therefore, their production was not demandable by the justice. The judgment must be affirmed.